FILED
2022 FEB 14 AM 8:35
CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| GERALD B., <br><br> Plaintiff, <br><br> v. <br><br> KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration, <br><br> Defendant. | **MEMORANDUM DECISION AND ORDER AFFIRMING THE COMMISSIONER'S DECISION DENYING DISABILITY BENEFITS** <br><br> Case No. 1:20-cv-00096 <br><br> Magistrate Judge Daphne A. Oberg |

Plaintiff Gerald B.[1] filed this action asking the court to reverse and remand the Acting Commissioner of the Social Security Administration's ("Commissioner") decision denying his application for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–434, 1381–1385. (*See* Pl.'s Opening Br. 1, Doc. No. 24.) The Administrative Law Judge ("ALJ") denied his application, finding Mr. B. did not qualify as disabled. (Certified Tr. of Admin. R. ("Tr.") 70–78, Doc. No. 17.) Because substantial evidence supports the ALJ's decision, and careful review of the record and the parties' briefs[2] establishes the ALJ did not err in his use and analysis of the vocational expert's testimony, the decision is affirmed.[3]

---

[1] Pursuant to best practices in the District of Utah addressing privacy concerns in certain cases, including Social Security cases, the court refers to Plaintiff by his first name and last initial only.

[2] Pursuant to Civil Rule 7-1(g) of the Rules of Practice for the United States District Court for the District of Utah, the appeal will be determined on the basis of the written memoranda, as oral argument is unnecessary.

[3] The parties consented to proceed before a magistrate judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. (Doc. No. 11.)

1

STANDARD OF REVIEW

Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code provide for judicial review of a final decision of the Commissioner. This court reviews the ALJ's decision and the record as a whole to determine whether substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards. 42 U.S.C. § 405(g); *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). "[A]n ALJ's factual findings . . . shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153, ___ U.S. ___ (2019) (internal quotation marks omitted). Although the evidentiary sufficiency threshold for substantial evidence is "not high," it is "more than a mere scintilla." *Id.* at 1154 (internal quotation marks omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (internal quotation marks omitted). And the court may not substitute its judgment for that of the ALJ. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).

APPLICABLE LAW

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also id.* § 1382c(a)(3)(A). An individual is considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his

age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A); *see also id.* § 1382c(a)(3)(B).

In making this disability determination, the ALJ employs a five-step sequential evaluation, considering whether:

1) The claimant presently engages in substantial gainful activity;

2) The claimant has a severe medically determinable physical or mental impairment;

3) The impairment is equivalent to one of the impairments listed in the appendix of the relevant disability regulation which preclude substantial gainful activity;

4) The claimant possesses a residual functional capacity to perform past relevant work; and

5) The claimant possesses a residual functional capacity to perform other work in the national economy considering his/her/their age, education, and work experience.

*See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140–42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988).  The claimant has the burden, in the first four steps, of establishing the disability.  *Ray v. Bowen*, 865 F.2d 222, 224 (10th Cir. 1989).  At step five, the burden shifts to the Commissioner to show the claimant retains the ability to perform other work existing in the national economy.  *Id.*

PROCEDURAL HISTORY

Mr. B. filed an application for disability insurance and supplemental security income benefits on June 10, 2016, alleging disability beginning June 25, 2013.  (Tr. 70, 278–87, 318.) Mr. B. claimed disability due to conditions including anxiety, depression, diabetes, and knee and back problems.  (*Id.* at 318.)  After an administrative hearing on Mr. B.'s claims, (*see id.* at 85–

110), the ALJ issued a decision finding Mr. B. not disabled and denying his claims, (*id.* at 70–78).

At step two of the sequential evaluation, the ALJ determined Mr. B. had the severe impairments of "obesity; status post right rotator cuff repair; asthma; left foot tendonitis; degenerative joint disease of the bilateral knees; degenerative disc disease of the lumbar and cervical spines; somatoform disorder; social anxiety disorder; panic disorder; and an unspecified depressive disorder." (*Id.* at 72.) At step three, the ALJ found Mr. B.'s impairments did not meet or equal the severity of an impairment listing. (*Id.* at 73.) At step four, the ALJ determined Mr. B. had the residual functional capacity (RFC) to perform sedentary work with additional exceptions:

> [T]he claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except he is able to lift and/or carry 20 pounds occasionally and 10 pounds frequently. He can stand and/or walk about 2 hours in an 8-hour workday and can sit about 6 hours. He can occasionally climb ramps and stairs but never ladders, ropes, and scaffolds. He can occasionally balance, stoop, kneel, crouch and crawl. He is limited to occasional overhead reach with his bilateral upper extremities. He can have occasional exposure to irritants, such as: fumes, odors, dust, gases and poorly ventilated areas. He should avoid all exposure to hazardous machinery and unprotected heights. He is able to understand, remember, and carry out simple, routine instructions with only occasional interaction with coworkers and the public.

(*Id.* at 74.) In other words, the ALJ concluded Mr. B had a functional capacity including a mix of light and sedentary limitations.

With these limitations, the ALJ found Mr. B. incapable of performing any of his past, relevant work. (*Id.* at 77.) However, relying on the testimony of a vocational expert, the ALJ concluded jobs existed in significant numbers in the national economy which Mr. B. could perform. (*Id.* at 77–78.) At the administrative hearing, the vocational expert testified a hypothetical person with the same background as Mr. B.—

who could lift and carry ten pounds frequently and twenty pounds occasionally, and could stand or walk for two hours and sit for six hours in an eight-hour workday—could perform three different "seated[,] light" jobs existing in sufficient numbers in the national economy. (*Id.* at 35–36.)

The Appeals Council denied Mr. B.'s request for review, making the ALJ's decision the final decision of the Commissioner. (*See id.* at 1–14.)

## DISCUSSION

Mr. B. raises a single claim of error: he argues the ALJ erred at step five of the sequential evaluation. (Opening Br. 6, Doc. No. 20.) Specifically, he claims the ALJ failed to elicit a reasonable explanation from the vocational expert regarding a conflict between the ALJ's RFC assessment and the vocational expert's answers based on the Dictionary of Occupational Titles ("DOT"). (*Id.* at 7–8.) According to Mr. B., the fact that none of the DOT descriptions of the three light jobs the expert listed specify whether the jobs are typically performed seated or standing creates an apparent conflict—where the RFC assessment included both sedentary and light limitations. (*Id.* at 6–7.) Mr. B. argues that because of this, the ALJ needed to elicit a reasonable explanation for the conflict from the expert; something he failed to do. (*Id.* at 8.)

For her part, the Commissioner contends there was no conflict between the RFC assessment and the jobs from the DOT identified by the vocational expert. (Answer Br. 4–5, Doc. No. 24.) According to the Commissioner, the three jobs the vocational expert identified were consistent with the RFC (and the hypothetical scenario based on it) because the vocational expert specified the jobs were "seated." (*Id.* at 4.) She also maintains the ALJ followed the applicable regulations with regard to the vocational expert's testimony. (*Id.* at 6.)

In *Haddock v. Apfel*, 196 F.3d 1084 (10th Cir. 1999), the Tenth Circuit concluded an ALJ may not rely on evidence from a vocational expert to support a finding of nondisability at step five, unless she asks the expert "how his or her testimony as to the exertional requirement of identified jobs corresponds with the Dictionary of Occupational Titles, and elicit[s] a reasonable explanation for any discrepancy on this point." *Id.* at 1087. In other words, the ALJ must try to resolve any conflict between the vocational expert and the DOT. *See id.* at 1091. After *Haddock*, Social Security Ruling 00-4p was promulgated, which explains that when a vocational expert testifies about job requirements, the ALJ has "an affirmative responsibility" to ask about any conflict between the testimony and the DOT. SSR No. 00-4p, 2000 SSR LEXIS 8, *8–9. And if the testimony "appears to conflict with the DOT," the ALJ must "obtain a reasonable explanation for the apparent conflict." *Id.* at *9.

Mr. B. claims the conflict between the DOT and the vocational expert's testimony stems from the fact that none of the descriptions for the three jobs the expert listed specify whether the jobs are performed seated or standing. (Opening Br. 6–7, Doc. No. 20.) The vocational expert listed the jobs of electronics worker, circuit board assembler, and wafer cleaner as light, seated jobs Mr. B. could perform. (Tr. 36.) It is true, as Mr. B. posits, that the DOT descriptions for these jobs lack information regarding the typical time spent seated or standing. Instead, each of the descriptions indicate the position can require either standing or sitting most of the time. *See* Dictionary of Occupat'l Titles 726.687-010, Electronics Worker; Dictionary of Occupat'l Titles 726.687-038,[4] Preassembler, Printed Circuit Board; Dictionary of Occupat'l Titles 590.685-062, Cleaning Machine Tender, Semiconductor Wafers.

---

[4] The transcript of the vocational expert's testimony lists this job number as 726.667-038, (*see* Tr. 36), but that appears to be an error, as there is no such job number. (*See also* Opening Br. 7, Doc. No. 20 (providing link to website for job number 726.687-038).)

The problem with Mr. B.'s argument is that pointing to the lack of information in the description of jobs in the DOT is not the same as pointing to conflicting information. Mr. B. himself acknowledged "none of the descriptions discusses whether these jobs are typically performed in a seated or standing position." (Opening Br. 7, Doc. No. 20.) But this fact means there can be no apparent unresolved conflict between the DOT and the vocational expert's testimony. *Cf. Webb v. Comm'r, Soc. Sec. Admin.*, 750 F. App'x 718, 722–23 (10th Cir. 2018) (unpublished) (finding no conflict between vocational expert testimony and the DOT where the DOT "does not address sit/stand options"); *Butterick v. Astrue*, 430 F. App'x 665, 668 (10th Cir. 2011) (unpublished) (finding it unnecessary to explain conflicts where there were no conflicts to explain). The ALJ had no obligation to elicit an explanation from the vocational expert regarding a nonexistent conflict between his testimony and the DOT.

To the extent Mr. B. also implies there is an unresolved conflict between the RFC/vocational expert's testimony and the requirements of light work, he is incorrect. A sit/stand restriction does not necessarily prevent light work. Jobs may fall in the light work category which involve "sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b). Where a claimant's RFC does not cleanly coincide with a defined exertional range (where, as here, it falls between light and sedentary),"the occupational base is affected and may or may not represent a significant number of jobs." SSR No. 83-12, 1983 SSR LEXIS 32, *3. This requires the ALJ to "consult a vocational resource," *id.* at *4, particularly "[i]n cases of unusual limitation of ability to sit or stand," *id.* at *9–10. *See also Trimiar v. Sullivan*, 966 F.2d 1326, 1333 (10th Cir. 1992) ("[W]here exertional limitations prevent the claimant from doing the full range of work specified in his assigned residual function category," the ALJ must use a vocational expert to determine "whether jobs exist for someone

7

with the claimant's precise disabilities." (internal quotation marks omitted)). In other words, an ALJ fulfills his obligation as long as he consults the vocational expert about the erosion of the occupational base and whether jobs exist in significant numbers in the national economy for someone of the claimant's RFC. *See Casey v. Barnhart*, 76 F. App'x 908, 911 (10th Cir. 2003) (unpublished) (citing *Moore v. Apfel*, 216 F.3d 864, 870–71 (9th Cir. 2000)); *Holcom v. Barnhart*, 79 F. App'x 397, 398–99 (10th Cir. 2003) (unpublished). The ALJ here fulfilled this obligation. He consulted a vocational expert about jobs in the national economy for someone of Mr. B.'s RFC, and the vocational expert found 143,000 available positions. (Tr. 36.) The vocational expert adequately explained the basis for his opinion, and the ALJ legitimately relied upon it.

Where no conflict exists between the vocational expert's testimony and the DOT, and where the ALJ acted properly in consulting a vocational expert who identified jobs Mr. B. could perform notwithstanding his limitations, the ALJ's decision must be affirmed. The ALJ did not err in his step five analysis and substantial evidence supports the Commissioner's decision to deny benefits.

## CONCLUSION

For the reasons set forth above, the court AFFIRMS the Commissioner's decision.

DATED this 14th day of February, 2022.

BY THE COURT:

_Daphne A. Oberg_
Daphne A. Oberg
United States Magistrate Judge